J-S23023-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HILLARD BETHEA | : | |
| | : | |
| Appellant | : | No. 175 EDA 2021 |

Appeal from the PCRA Order Entered December 17, 2020,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s): CP-51-CR-0005123-2008.

BEFORE:   LAZARUS, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY KUNSELMAN, J.:        **FILED SEPTEMBER 10, 2021**

Hillard Bethea appeals from the order denying his first timely petition filed pursuant to the Post Conviction Relief Act ("PCRA"). 42 Pa.C.S.A. §§ 9541-46. We affirm.

On direct appeal, this Court summarized:

> The underlying facts of the case are not in direct dispute in this appeal. During the early morning hours of Thursday, March 13, 2008, [Bethea] left his home in Elkins Park, Montgomery County and drove a stolen van into the Kensington section of Northeast Philadelphia. There, he solicited a prostitute, the victim. She agreed to provide a combination of oral and vaginal sex (with a condom), for forty dollars. The two drove off in the stolen van, and after stopping at a store for [Bethea] to buy the condom, they went to a nearby parking lot.

---

[*] Retired Senior Judge assigned to the Superior Court.

While having sex in the back of the van, [Bethea] removed the condom he was wearing and proceeded to urinate on the victim as well as continue vaginal intercourse, now unprotected. The victim protested these and other related acts and began to fight with [Bethea]. He punched her in the face with his fists. When they heard another car start up, the victim tried to get the attention of the other motorist by kicking and yelling loudly. [Bethea] tied a rope around her neck, knotted it, and pulled it from both sides, choking her.

[Bethea] then ran to the front of the van and began to drive away. The victim followed him to the front of the van. She tried to get out, but the doors were locked. While driving erratically, [Bethea] pulled out a thirteen-inch serrated commercial grade kitchen knife and began stabbing at the victim over his right shoulder. She suffered stab wounds to her left leg, thigh, calf, buttock, and palm, right arm, and face. Color photographs introduced by the Commonwealth as trial exhibits confirm that the stab injuries were numerous, deep, and severe. The victim testified that she thought she was going to die.

Then the victim saw a ballpeen hammer on the floor of the van. She picked it up and began hitting [Bethea] with it in the area of his right eye, until he crashed the van into a pole. The victim, naked except for socks and sneakers, tried to retrieve her clothes, but [Bethea] would not let her, punching her in the face. He drove off, leaving her behind, naked and bleeding.

Onlookers called the police, who found the van in an apartment parking lot, and confirmed it was stolen. They then traced [Bethea] through the identification he had left in his wallet on the floor of the van. The victim also identified [Bethea] from a photo array. Cheltenham police arrested [Bethea] at his home in Elkins Park on a warrant from the Philadelphia police.

*Commonwealth v. Bethea*, 185 A.3d 364, 366-67 (Pa. Super. 2018)

(citations and footnotes omitted).

- 2 -

We also summarized the procedural history of the case, which included a prior appeal and remand, as follows:

> On November 1, 2010, [Bethea] waived his right to a jury and proceeded to a bench trial. In the middle of the trial, on November 4, 2010, the parties agreed to a negotiated open plea in which [Bethea] would plead guilty to aggravated assault, possession of an instrument of crime, and unauthorized use of an automobile. In return, the Commonwealth agreed to withdraw the charges of attempted murder, rape, and aggravated indecent assault.
>
> On February 15, 2011, the trial court imposed an aggregate sentence of not less than seven nor more than twenty years of incarceration in a state correctional institution. [Bethea] was extremely upset, and had to be subdued by the sheriff staff. [Bethea] filed a *pro se* motion to withdraw his plea of guilty on February 24, 2011. He claimed, *inter alia*, that he had not been properly informed of the maximum possible sentence, and in fact, had been assured of a lighter sentence [or] sixty-four months' imprisonment. The trial court denied the motion to withdraw the plea. [Bethea] appealed.
>
> On July 11, 2012, a predecessor panel of this Court, noting discrepancies in the maximum length of sentence stated in the written and oral guilty plea colloquies, vacated [Bethea's] judgment of sentence and remanded for trial.

***Bethea***, 185 A.3d at 367-68 (citation and footnotes omitted).

Following remand, the trial court held a hearing on various motions, including Bethea's *pro se* motion for recusal. "The trial judge refused to recuse herself, noting that in a jury trial the jury, not she, would be the finder of fact." ***Id.*** at 368.

On February 4, 2014, a jury convicted Bethea of aggravated assault, rape, possession of an instrument of crime, and unauthorized use of a motor

vehicle. On November 21, 2014, the trial court found Bethea to be a sexually violent predator and sentenced him to an aggregate term of 23½ to 47 years of incarceration. Bethea filed a timely appeal to this Court in which he challenged the trial court's denial of his Pa.R.Crim.P. 600 motion, and an alleged error that occurred during jury section. *Bethea*, 185 A.3d at 369. Finding no merit to either claim, we affirmed his judgment of sentence. *Bethea*, *supra*.

On April 23, 2019, Bethea filed a *pro se* PCRA petition. The PCRA court appointed counsel, but the petition was held in abeyance until Bethea's pending petition for allowance of appeal was considered. On November 5, 2019, our Supreme Court denied Bethea's petition. *Commonwealth v. Bethea*, 219 A.3d 597 (Pa. 2019).

On March 20, 2020, PCRA counsel filed an amended PCRA petition. The Commonwealth filed a motion to dismiss the petition on July 20, 2020. On November 13, 2020, the PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss Bethea's PCRA petition without a hearing. Bethea did not file a response. By order entered December 17, 2020, the PCRA court denied Bethea's petition. This timely appeal followed. The PCRA court did not require Pa.R.A.P. 1925 compliance.

Bethea raises the following issues on appeal:

> I. Whether the [PCRA] court erred in denying [Bethea's] PCRA petition without an evidentiary hearing on the issues raised in the amended PCRA petition regarding trial counsel's ineffectiveness.

II. Whether the [PCRA] court was in error in not granting relief on the issue that counsel was ineffective for the following reasons:

a. Counsel was ineffective for failing to file a post[-]verdict motion that the verdict was against the weight of the evidence.

b. Counsel was ineffective for failing to file a motion for reconsideration of sentence.

c. Appellate counsel was ineffective for failing to appeal [the denial of the] recusal of trial judge motion.

d. Appellate counsel was ineffective for failing to appeal [the] issue that the charges were contrary to law[.]

Bethea's Brief at 7.

This Court's standard of review regarding an order dismissing a petition under the PCRA is to ascertain whether "the determination of the PCRA court is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." ***Commonwealth v. Barndt***, 74 A.3d 185, 191-92 (Pa. Super. 2013) (citations omitted).

> The PCRA court has discretion to dismiss a petition without a hearing when the court is satisfied that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings. To obtain a reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of material fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing.

*Commonwealth v. Blakeney*, 108 A.3d 739, 750 (Pa. 2014) (citations omitted).

In his four substantive claims set forth in issue II of his brief, Bethea challenges the effectiveness of trial and appellate counsel. To obtain relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must establish by a preponderance of the evidence that counsel's ineffectiveness so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place. *Commonwealth v. Johnson*, 966 A.2d 523, 532 (Pa. 2009). "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." *Id.* This requires the petitioner to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) the petitioner was prejudiced by counsel's act or omission. *Id.* at 533. A finding of "prejudice" requires the petitioner to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. *Commonwealth v. Martin*, 5 A.3d 177, 183 (Pa. 2010).

When attempting to prove ineffectiveness, the burden is always on the PCRA petitioner. While claims of trial court error may support the arguable merit element of an ineffectiveness claim, a PCRA petitioner must meaningfully discuss each of the three prongs of the ineffectiveness claim in

order to prove that he is entitled to relief. ***Commonwealth v. Reyes-Rodriguez***, 111 A.3d 775, 780 (Pa. Super. 2015). To this end, failure to elicit testimony from trial counsel regarding the reasonable basis for trial counsel's actions is fatal to a PCRA claim of ineffectiveness. ***See Commonwealth v. Koehler***, 36 A.3d 121, 146-47 (Pa. 2012). It is petitioner's burden to produce counsel at a PCRA evidentiary hearing in order to meet his burden of proof that his claims warrant relief. ***Commonwealth v. Jones***, 596 A.2d 885 (Pa. Super. 1991).

Here, the PCRA court has authored a thorough and well-reasoned opinion supporting the denial of post-conviction relief. The Honorable Linda K. Carpenter has addressed each of Bethea's ineffectiveness claims with proper citation to legal authorities and citation to the certified record. We discern no legal errors in Judge Carpenter's analysis and/or an abuse of discretion when rejecting Bethea's claims. As such, we adopt Judge Carpenter's opinion as our own in affirming the order denying Bethea post-conviction relief. ***See*** PCRA Court's Opinion, 1/6/21, at unnumbered 7-9 (concluding that Bethea could not prove prejudice regarding trial counsel's failure to file a post-verdict motion challenging the weight of the evidence; given all the evidence presented at trial, the jury's guilty verdict did not shock one's sense of justice); at unnumbered 9-11 (concluding Bethea could not prove prejudice regarding trial counsel's failure to file a motion for reconsideration of sentence; because the trial court provided reasons for its sentence and explained that the aggregate sentence included a rape

- 7 -

conviction when his original plea did not); at unnumbered 11-13 (concluding appellate counsel was not ineffective for failing to appeal the denial of Bethea's *pro se* recusal motion; the trial court was no longer the fact-finder, and Bethea failed to establish the court's bias against him); and at unnumbered 13-16 (concluding appellate counsel was not ineffective for failing to challenge his convictions as being "contrary to law;" the evidence trial was more than sufficient to sustain Bethea's convictions).[1]

Finally, because we agree with Judge Carpenter that Bethea's ineffectiveness claims did not warrant an evidentiary hearing, Bethea's claim to the contrary at issue I in his brief fails. ***Blakeney supra***.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/10/2021

---

[1] The parties are directed to attach Judge Carpenter's January 6, 2021, opinion to this memorandum in any future appeal.

THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVNIA :      CP-51-CR-0005123-2008

            v. :

HILLARD BETHEA :

## OPINION

This Opinion is written in support of this Court's December 17, 2020 dismissal of Hillard Bethea's PCRA petition.

## PROCEDURAL HISTORY

The proceedings before this Court began on November 1, 2010 when Defendant Hillard Bethea ("Bethea") waived his right to a jury trial and proceeded to a bench trial. On November 4, 2010, in the middle of the bench trial, the Commonwealth and this Court allowed Bethea to plead guilty to the charges of Aggravated Assault (F1), Possession of Instrument of Crime ("PIC") (M1), and Unauthorized Use of an Automobile ("UUA") (M2) and the Commonwealth withdrew the charges of Attempted Murder (H1), Rape (F1), and Aggravated Indecent Assault (F2). Following the plea, this Court deferred sentencing for the completion of a Pre-Sentence Investigation report and mental health evaluation. On February 15, 2011, this Court sentenced Bethea to a period of 7–20 years of incarceration in a state facility. The case was continued to April 25, 2011 for Bethea to be instructed on his rights to appeal, as Bethea had created a disturbance in court at the time his

sentence was imposed.[1] On April 29, 2011, Bethea filed a motion to withdraw his guilty plea, which this Court denied on July 7, 2011 and contemporaneously filed an Order appointing new counsel and requesting that counsel file an appeal from the judgment of sentence imposed by this Court on February 15, 2011. On July 26, 2011, this Court received a Notice of Appeal and, on July 11, 2012, the Superior Court, having found that this Court erred in denying Bethea's motion to withdraw his guilty plea, vacated Bethea's sentence and remanded for trial.

New counsel was appointed and, on May 2, 2013, this Court conducted a hearing to address the status of the remand as well as various motions. At the conclusion of the hearing, this Court granted Bethea's motion for a mistrial of the non-jury trial, based upon manifest necessity, with the understanding that any and all double jeopardy arguments were waived and scheduled the matter for retrial with a jury.[2] Further, this Court denied Bethea's motion for recusal, as the matter was going forward as a jury trial and thus, relinquished this Court of its duty as the finder of fact. The matter was then continued to January 27, 2014 for trial.

On January 27, 2014, this Court commenced voir dire and continued the matter to the next day. On January 28, 2014, this Court concluded voir dire and heard and denied Bethea's Motion in Limine to preclude impeachment by evidence of a criminal conviction as well as his Motion for Dismissal, pursuant to Rule 600. Bethea elected to exercise his

---

[1] Bethea began shouting at his attorney and after he got up from his chair he had to be restrained by the sheriff. Bethea was uncooperative with the sheriff and could not be moved into the holding area until backup arrived, after he had already thrown his glass eyeball across the courtroom. See N.T. 2/15/2011 at 40:2-25; 41:2-18.

[2] As set forth in the record from the hearing, because the appellate court simply vacated the sentence and plea and remanded, but did not remand for a new trial, the procedure put Bethea back to his posture before the plea, which was in the middle of a non-jury trial before this Court. As such, any request for a mistrial for manifest necessity and retrial before a jury trial had to come from Bethea in order to not have double jeopardy attach.

right to a jury trial and pled not guilty to all charges. On February 4, 2014, the jury found Bethea guilty of Rape (F1), Aggravated Assault (F1), Possession of Instrument of Crime (M1), and Unauthorized Use of an Automobile (M2). At the conclusion of the trial, sentencing was deferred several times for the completion of a Pre-Sentence Investigation Report as well as an assessment by the Sexual Offenders Assessment Board.[3] On November 21, 2014, this Court found Bethea to be a sexually violent predator and sentenced him to an aggregate sentence of 23.5–47 years of incarceration.

On December 7, 2014, Bethea filed a Notice of Appeal to the Superior Court of Pennsylvania and the Court affirmed his convictions and judgment of sentence on April 23, 2018. Bethea filed a Petition for Leave to File Petition for Allowance of Appeal Nunc Pro Tunc to the Supreme Court of Pennsylvania, which was granted, and Bethea filed his Petition for Allowance of Appeal on May 28, 2019. On November 5, 2019, the Supreme Court denied the Petition.

On April 23, 2019, Bethea filed the instant, timely PCRA petition. The matter was first listed before this Court on May 17, 2019. On May 17, 2019, this Court issued an Order appointing PCRA counsel and continued the matter to June 28, 2019 for status of counsel. Counsel was appointed on May 20, 2019. On June 28, 2019, August 14, 2019, and October 11, 2019, this Court continued the matter for the disposition of the Petition still pending before the Supreme Court.[4] On November 22, 2019, this Court confirmed

---

[3] In her May 1, 2014 report, Dr. Barbara Ziv, of the Sexual Offenders Assessment Board, concluded that Bethea met the criteria for a sexually violent predator.

[4] Pursuant to 42 Pa.C.S. 9545(b)(1), a PCRA petition, including a second or subsequent petition, must be filed within one year of the date the judgment becomes final, unless the petitioner satisfies one of the statutorily enumerated exceptions to the time bar. A judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review. 42 Pa.C.S. 9545(b)(3). Here, Bethea's request for review by the Supreme Court was not a timely filed request for review and thus, did not toll the deadline for filing a PCRA petition. Bethea timely filed the instant petition on April 23, 2019,

with counsel that the Petition before the Supreme Court had been denied and continued the matter to January 24, 2020 for amended defense filing. On January 24, 2020, this Court continued the matter to March 20, 2020 for amended defense filing. On March 15, 2020, counsel filed an Amended Petition. On March 16, 2020, the courts closed due to the COVID-19 pandemic and this Court continued the matter to May 8, 2020. On May 8, 2020, the courts remained closed. On June 17, 2020, this Court continued the matter to July 23, 2020 for status of Commonwealth response. The Commonwealth filed its Motion to Dismiss on July 20, 2020. On July 23, 2020, this Court continued the matter to September 24, 2020 for Court decision. On September 24, 2020, this Court continued the matter to November 13, 2020 for further review of the record. On November 13, 2010, this Court sent Bethea a 907 Notice, pursuant to Pa.R.Crim.P. 907(1). This Court did not receive any response to the 907 Notice. On December 17, 2020, this Court dismissed the PCRA petition.

## DISCUSSION

The standard applied when reviewing an order dismissing a PCRA petition is whether the determination of the PCRA court is supported by the record evidence and is free of legal error.[5] The PCRA court's factual determinations are entitled to deference, but its legal determinations are subject to plenary review.[6] The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record.[7]

---

however, in the interests of justice, this Court determined that it would await the Supreme Court's disposition of the request for relief before ruling on the instant PCRA petition.
[5] *Com. v. Hart*, 911 A.2d 939, 941 (Pa. Super. 2006).

[6] *Com. v. Hawkins*, 894 A.2d 716, 722 (Pa. 2006).
[7] *Com. v. Hart*, 911 A.2d 939, 941 (Pa. Super. 2006).

Pursuant to 42 Pa.C.S. 9545(b), a PCRA petition, including second and subsequent petitions, must be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that his claim(s) fall under any of the three enumerated exceptions to the one year requirement. These exceptions are interference by government officials[8], facts unknown and not discoverable by due diligence[9], and newly recognized constitutional rights that apply retroactively[10]. A petition claiming one of these exceptions must be filed within sixty (60) days of the time the claim could have been presented.[11] Further, the Pennsylvania Supreme Court set forth in *Commonwealth v. Fahy*[12] that "a claim of ineffective assistance of counsel does not save an otherwise untimely petition for review on the merits."[13]

In the instant matter, Bethea's PCRA Petition was timely filed and asserted various claims of ineffective assistance of both trial and appellate counsel. Upon review of the record, the petition, and the submissions of counsel, this Court has determined that Bethea's claims are without merit.

Under the Post-Conviction Relief Act, claims of ineffective assistance of counsel are evaluated pursuant to the three-prong test set forth by the Pennsylvania Supreme Court in *Commonwealth v. Pierce*[14], using the same standard as when such claims are raised on direct appeal.[15] *Pierce* established that ineffectiveness claims are measured by both counsel's performance and the prejudice suffered by the petitioner.[16] The law

---

[8] 42 Pa.C.S. 9545(b)(1)(i).
[9] 42 Pa.C.S. 9545(b)(1)(ii).
[10] 42 Pa.C.S. 9545(b)(1)(iii).
[11] 42 Pa.C.S. 9545(b)(2).
[12] 737 A.2d 214 (Pa. 1999).
[13] *Id.* at 223.
[14] 527 A.2d 973 (Pa. 1987).
[15] *Com. v. Kimball*, 724 A.2d 326 (Pa. 1999).
[16] *Com. v. Pierce*, 527 A.2d 973, 975 (Pa. 1987).

presumes counsel to have been effective; thus, the petitioner bears the burden of establishing the following three prongs: first, that the ineffectiveness claim has arguable merit; second, that counsel's act or omission did not have a reasonable basis; and third, that the petitioner suffered prejudice on account of counsel's act or omission.[17] If it is apparent that the prejudice prong has not been met, the first two prongs of the test need not be determined.[18]

In assessing the *Pierce* prongs related to counsel's performance, counsel's error or omission "must have so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place."[19] Counsel inherently has broad discretion to determine the strategy employed, thus a review of counsel's act or omission must determine whether counsel's decisions were reasonably designed to benefit the client.[20] A finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued.[21]

In assessing the prejudice prong of *Pierce*, the petitioner must prove that he suffered prejudice on account of counsel's decisions. "Prejudice" can be described as whether, but for the arguably ineffective act or omission, there is a reasonable probability that the outcome would have been different.[22] In other words, the petitioner

---

[17] *Id.; see also Com. v. Breakiron*, 729 A.2d 1088, 1101 (Pa. 1999).
[18] *Com. v. Jones*, 683 A.2d 1181, 1188 (Pa. 1996).
[19] *Com. v. Hawkins*, 894 A.2d 716, 722 (Pa. 2006) (citing *Com. v. Allen*, 732 A.2d 582, 587 n.15 (Pa. 1999).
[20] *Com. v. Fowler*, 670 A.2d 153, 155 (Pa. Super 1996); *Com. v. Polston*, 616 A.2d 669, 677 (Pa. Super 1992).
[21] *Com. v. Howard*, 719 A.2d 233, 237 (Pa. 1998).
[22] *Com. v. Kimball*, 724 A.2d 326, 330 (Pa. 1999).

must establish that counsel's actions prejudiced him to such an extent that a *reliable* determination of guilt was not made at trial.[23]

### Claims of ineffectiveness of trial counsel

Bethea avers that trial counsel was ineffective for failing to file a post-trial motion that the verdict was against the weight of the evidence and for failing to file a post-trial motion for reconsideration of sentence. This Court rejects such claims. With regard to ineffective assistance claims, the courts of this Commonwealth have drawn a distinction "between errors which completely foreclose merits review and those which merely 'narrow its ambit.'"[24] Where counsel has failed to comply with a request to file a timely direct appeal, prejudice is inherent because the petitioner has been deprived of his appellate rights; as such, the per se ineffectiveness exception to *Strickland/Pierce* applies.[25] However, counsel's failure to file post-trial motions does not fall within this narrow ambit of ineffectiveness claims obviating the requirement of showing prejudice.[26] Thus, petitioner must plead and prove each of the three *Strickland/Pierce* prongs, including prejudice, which requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[27]

Here, in order to obtain relief on his first ineffectiveness claim, Bethea must demonstrate that the verdict was against the weight of the evidence, such that this Court

---

[23] *Com. v. Lassen*, 659 A.2d 999, 1011 (Pa. Super 1995).

[24] *Com. v. Smith*, 181 A.3d 1168, 1186–87 (Pa. Super. 2018) (citing *Com. v. Rosado*, 150 A.3d 425, 432 (Pa. 2016)).

[25] *Com. v. Reaves*, 923 A.2d 1119, 1128 (Pa. 2007).

[26] *Com. v. Corley*, 31 A.3d 293, 296 (Pa. Super. 2011) (citing *Com. v. Reaves*, 923 A.2d 1119 (Pa. 2007)).

[27] *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

would have granted the post-trial motion, thereby rendering counsel ineffective for failing to file the post-trial motion. Our Superior Court has held that:

> [O]ne of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice. A new trial is warranted in this context only when the verdict is so contrary to the evidence that it shocks one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.[28]

At trial, the jury heard testimony from the victim Melody Jiminez, an expert in forensic DNA analysis (Mr. Levin), a criminalistics technician (Ms. Lane), the owner of the minivan used by Bethea, numerous police officers, and Bethea himself, and was able to assess each of their credibility as a witness. The collective testimony of the Commonwealth witnesses established that although the sexual encounter between Ms. Jiminez and Bethea began as a negotiated, consensual act, Bethea's subsequent sexually violent conduct went far beyond the terms of their agreement. The two had agreed to $40 for oral and vaginal sex, but their agreement did not include unprotected sex without a condom nor any other related sexual acts. As such, Bethea's actions in removing the condom, urinating on Ms. Jiminez, and turning violent against her immediately terminated the consensual status of the sexual acts. Despite the termination of consent, Bethea continued his sexual violence against Ms. Jiminez by punching her, threatening that he could kill her, and ultimately vaginally penetrating her without a condom. Moreover, the jury had the opportunity to view the disparate physical stature of the parties – Bethea, a 5' 8" man weighing 280 pounds and Ms. Jiminez, a 5' 5" woman weighing 135 pounds. While Bethea testified in his own defense and presented the issue

---

[28] *Com. v. Smith*, 181 A.3d 1168, 1186–87 (Pa. Super. 2018) (citing *Com. v. Konias*, 136 A.3d 1014, 1022 (Pa. Super. 2016).

of self-defense to the jury. Ms. Jiminez's testimony provided that, following her resistance to Bethea's non-consensual sexual violence, Bethea put a rope around her neck and attempted to choke her while continuing to punch her and overpower her inside of the van. Further, while driving erratically away from the parking lot, Bethea repeatedly swung a 13" knife at Ms. Jiminez, such that she suffered stab wounds to her left leg, thigh, calf, buttock, and palm, right arm, and face. Upon crashing and exiting the van, Bethea continued in his course of hitting and punching Ms. Jiminez when he saw her attempt to retrieve her clothes. The jury verdict, reflecting the assessment of all of the evidence presented at trial, was not so contrary to the evidence presented at trial as to "shock one's sense of justice." Therefore, Bethea's claim that trial counsel was ineffective for failing to file a post-trial motion that the verdict was against the weight of the evidence must fail.

In order to obtain relief on his second ineffectiveness claim, Bethea must demonstrate that it was a manifest abuse of this Court's discretion to impose a greater sentence after Bethea was convicted by a jury than was imposed after the original guilty plea, such that this Court would have granted the post-trial motion, thereby rendering counsel ineffective for failing to file the post-sentence motion. Our courts have long held that "[s]entencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed [. . .] absent a manifest abuse of that discretion."[29] In fashioning a sentence, the court must consider the sentencing guidelines; however, the guidelines are advisory only. The trial court must consider the character of the defendant and the particular circumstances of the offense, and must "impose a sentence that is consistent with the protection of the public, the gravity of the offense, and the rehabilitative

---

[29] *Com. v. McClendon*, 589 A.2d 706, 712 (Pa. Super. 1991).

needs of the defendant."[30]   If the sentencing court decides that it is appropriate to sentence outside the guidelines, then it may do so, as long as it provides reasons.[31]  The Pennsylvania Supreme Court has stated that if the sentencing court provides reasons indicating it was not unreasonable to depart from the guidelines, then the reviewing court must affirm the sentence.[32]

At sentencing, this Court had the benefit of a Pre-Sentence Investigation Report as well as an assessment by the Sexual Offenders Assessment Board, wherein Dr. Ziv concluded that Bethea met the criteria for a sexually violent predator.  This Court found Bethea to be a sexually violent predator and sentenced him to an aggregate term of 23.5–47 years of incarceration.  The sentence was comprised as follows: 10–20 years of incarceration on the Aggravated Assault (F1) charge, 10–20 years of incarceration on the Rape (F1) charge to run consecutively because the rape was a separate act of violence from the assault, 2.5–5 years of incarceration on the Possession of Instrument of Crime (M1) charge to run consecutively, and 1–2 years of incarceration on the Unauthorized Use of an Automobile (M2) charge to run consecutively  The sentence on each charge was within the statutory maximum.  While the sentence was outside of the guidelines, this Court explained, at great length, the reasons for such departure.[33]  Moreover, this Court addressed the reasons for the differences in sentence length and structure between the initial sentence imposed on Bethea's guilty plea and the instant sentence imposed on his convictions by the jury as follows:

> I do want it to be specifically set forth that this is not in any way a penalty
> for anything from the first sentence where I sentenced him 7 to 20. The

---

[30] Com. v. Guth, 735 A.2d 709, 711 (Pa. Super. 1999).
[31] Com. v. Gibson, 716 A.2d 1275, 1277 (Pa. Super. 1999).
[32] Id. (citing Com. v. Smith, 673 A.2d 893 (Pa. 1996)).
[33] N.T. 11/21/2014 at 119-128.

charges were different. It was only in front of me on aggravated assault, not a rape. And I did not know a portion of what has been presented to me today as far as the details, because, Ms. Yankolonis, you admirably stuck with -- you did not load on because he wasn't convicted of the rape. I didn't know very much about some of the unrelated information or the details of the homicide. They weren't -- and the fact he had pled guilty and as accepting responsibility; whereas this time around, there was no remorse, no remorse, and no acceptance of responsibility, that there are just very different circumstances and a very different defendant. I'll also say that I found the level of his violence today in court, even though it didn't create such an uproar in the courthouse as it did, it was much more violent, because it took three hours, and we had five sheriffs from the beginning, and it still took five sheriffs. So the level of his violence was much higher today. And he didn't exhibit that violence until after the sentencing before. So it's a much different picture with a much different defendant right now to fully show his very dangerous and violent capabilities now versus when he was first here. For all of those reasons, that is why I sentenced him.[34]

The record itself clearly refutes any claim that a manifest abuse of discretion in sentencing would have been found and, as such, Bethea's second claim of ineffective assistance of trial counsel for not filing a motion for reconsideration of sentence must fail.

### Claims of ineffectiveness of appellate counsel

Bethea next avers that appellate counsel was ineffective for failing to present the Superior Court with issues regarding this Court's denial of the Motion for Recusal and the sufficiency of the evidence to sustain the convictions. This Court rejects such claims. In analyzing the duty of appellate counsel, our Superior Court looked to both the Supreme Court of the United States and the Supreme Court of Pennsylvania in determining that counsel is not required to raise all potentially appealable issues.[35] The Court concluded

---

[34] N.T. 11/21/2014 at 130-32.
[35] Com. v. Showers, 782 A.2d 1010, 1015-16 (Pa. Super. 2001). See also Jones v. Barnes, 463 U.S. (1983)); Com. v. Yocham, 375 A.2d 325 (Pa. 1977); Com. v. Laboy, 333 A.2d 868, 870 (Pa. 1975).

that "[i]t is the obligation of appellate counsel to present issues which, in counsel's professional judgment, 'go for the jugular' and do not get lost in a mound of other colorable, nonfrivolous issues which are of lesser merit."[36] In assessing a claim of ineffectiveness of appellate counsel for failure to raise an issue on direct appeal, the Court stated:

> Any evaluation of the effectiveness of appellate counsel must strike a balance between the duty to exercise professional judgment to limit the number of issues presented and the duty not to fail to litigate a substantial matter of arguable merit that presents a reasonable probability that a different outcome would have occurred had it been raised by prior counsel. It is the circumstances of the particular case which must guide a court in determining whether the truth-determining process was so undermined by the alleged ineffectiveness that no reliable adjudication of guilt or innocence could have taken place.[37]

Bethea has not shown how appellate counsel's failure to present either issue on appeal so undermined the truth-determining process that no reliable adjudication could have taken place.

With regard to the issue of recusal, Bethea has not demonstrated the requisite bias or prejudice. Per our Supreme Court, judges are presumed to be "'honorable, fair and competent,' and, when confronted with a recusal demand, have the ability to determine whether they can rule impartially and without prejudice."[38] Moreover, the Court has held that the party requesting recusal "bears the burden of producing evidence establishing bias, prejudice, or unfairness necessitating recusal, and the decision by a judge against whom a plea of prejudice is made will not be disturbed except for an abuse of discretion."[39]

---

[36] *Com. v. Showers*, 782 A.2d 1010, 1016 (Pa. Super. 2001).
[37] *Com. v. Showers*, 782 A.2d 1010, 1016-17 (Pa. Super. 2001).
[38] *Com. v. Druce*, 848 A.2d 104, 108 (Pa. 2004) (citing *Com. v. White*, 734 A.2d 374, 384 (Pa. 1999)).
[39] *Com. v. Druce*, 848 A.2d 104, 108 (Pa. 2004) (internal quotations omitted).

Initially, this Court notes that it was not the factfinder during Bethea's second proceeding. While Bethea had previously elected for a non-jury trial, in the middle of which he entered a plea, wherein this Court accepted the facts as presented by the Commonwealth, the instant convictions arise from a trial before a jury. This Court's role at trial did not involving any finding of facts or determination of guilt, but rather conducting a fair and orderly trial and making evidentiary rulings pursuant to the Pennsylvania Rules of Evidence. Bethea attempts to manufacture the existence of bias at trial by citing to the portion of the record where this Court was frustrated with Bethea for improperly pulling out his prosthetic eyeball while testifying on the stand in front of the jury.[40] Trial counsel argued that it was proper in the presentation of Bethea's claim of self-defense because the jury had seen the victim's scars, but this Court made a clear record of the fact that the victim's scars were presented as evidence of the serious bodily injury – an element of the crime put forth by the Commonwealth – she sustained in the assault. While Bethea would have been permitted to present a photograph of his eye at the time of the incident, he opted instead to pull out his eye on the stand to gain sympathy from the jury. This Court's admonishment of Bethea for his actions were not based in bias or prejudice against him, but instead based on his attempt to improperly circumvent the proper presentation of evidence before the jury. As such, he has not demonstrated that any bias was suffered at trial and, thus, cannot show the requisite prejudice suffered on account of appellate counsel not presenting the recusal issue to the Superior Court on appeal.

With regard to the claim that the charges were contrary to law, Bethea similarly has not shown the requisite prejudice. The record is clear that appellate counsel did raise

---

[40] N.T. 1/29/2014 at 109-119.

this issue in the 1925(b) Statement filed with this Court. Accordingly, this Court addressed the issue in its own 1925(a) Opinion to the Superior Court. This Court's 1925(a) Opinion provided the following:

### Sufficiency of the evidence

The standard applied when reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt.[41] In applying this test, the Superior Court may not weigh the evidence and substitute its judgment for that of the fact-finder. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless, the evidence is so weak and inconclusive that as a matter of law, no probability of fact may be drawn from the combined circumstance.[42] The Commonwealth may satisfy its burden of proving an element of the crime beyond a reasonable doubt through the use of wholly circumstantial evidence. In applying the test, the whole record must be evaluated and all evidence received must be considered.[43]

On appeal, Bethea asserts that the evidence was insufficient to convict him of Rape by Forcible Compulsion (F1) because the "complainant consented at the time of sexual penetration." This Court disagrees. To convict a person of Rape (F1), the Commonwealth must prove beyond a reasonable doubt that he engaged in sexual intercourse with the complainant by forcible compulsion.[44] The term "forcible compulsion" is defined by statute as "compulsion by use of physical, intellectual, moral, emotional or psychological force, either express or implied."[45] As stated by the Pennsylvania Supreme Court, forcible compulsion "includes not only physical force or violence but also moral, psychological or intellectual force used to compel a person to engage in sexual intercourse against that person's will."[46] The Pennsylvania Superior Court further held that "the degree of force required to constitute rape is relative and depends on the facts and particular circumstances of a given case."[47]

In the instant case, although the sexual encounter between Ms. Jiminez and Bethea began as a negotiated, consensual act, Bethea's subsequent sexually violent conduct went far beyond the terms of their agreement. The two had agreed to $40 for oral and vaginal sex, but their

---

[41] Com. v. Heberling, 678 A.2d 794, 795 (Pa. Super. 1996) (citing Com. v. Williams, 650 A.2d 420 (Pa. 1994)).

[42] Com. v. Cassidy, 668 A.2d 1143, 1144 (Pa. Super. 1995).

[43] Com. v. Valette, 613 A.2d 548, 549 (Pa. 1992).

[44] 18 Pa.C.S. § 3121(a)(1).

[45] 18 Pa.C.S. § 3101.

[46] Com. v. Rhodes, 510 A.2d 1217, 1226 (Pa. 1986).

[47] Com v. Eckrote, 12 A.3d 383, 387 (Pa. Super. 2010).

agreement did not include unprotected sex without a condom nor any other related sexual acts. As such, Bethea's actions in removing the condom, urinating on Ms. Jiminez, and turning violent against her immediately terminated the consensual status of the sexual acts. Despite the termination of consent, Bethea continued his sexual violence against Ms. Jiminez by punching her, threatening that he could kill her, and ultimately vaginally penetrating her without a condom. Viewing this course of conduct, with special emphasis on the physical stature of the parties – Bethea, a 5' 8" man weighing 280 pounds and Ms. Jiminez, a 5' 5" woman weighing 135 pounds – the evidence was more than sufficient for the jury to find Bethea guilty of Rape by Forcible Compulsion beyond a reasonable doubt.

Bethea further asserts that the evidence was insufficient to convict him of Aggravated Assault (F1) and PIC (M1) because Bethea "acted in self-defense." This Court disagrees. To convict a person of Aggravated Assault (F1), the Commonwealth must prove beyond a reasonable doubt that he attempted to cause serious bodily injury to another, or caused such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life.[48] Additionally, if the defendant properly raises the issue of self-defense, the Commonwealth also bears the burden of proving, beyond a reasonable doubt, that he did not act in justifiable self-defense.[49] Similarly, to convict a person of PIC (M1), the Commonwealth must prove beyond a reasonable doubt that he possessed any instrument of crime with intent to employ it criminally. However, if the defendant is found to have acted in self-defense, he did not act criminally and thus, cannot be found guilty of PIC (M1) because the requisite element of intent is not satisfied.[50]

In the instant matter, Bethea presented the issue if self-defense to the jury via his own testimony at trial and the jury was properly charged on the additional elements of self-defense that the Commonwealth was required to satisfy beyond a reasonable doubt. The jury also received a written copy of such elements, along with all of the other elements of the crimes charged, in the back during deliberations. It is clear from the jury's verdict that the jury did not find Bethea's account to be credible. Ms. Jiminez's testimony provided that, following her resistance to Bethea's non-consensual sexual violence, Bethea put a rope around her neck and attempted to choke her while continuing to punch her and overpower her inside of the van. Further, while driving erratically away from the parking lot, Bethea repeatedly swung a 13" knife at Ms. Jiminez, such that she suffered stab wounds to her left leg, thigh, calf, buttock, and palm, right arm, and face. Upon crashing and exiting the van, Bethea continued in his course of hitting and punching Ms. Jiminez when he saw her attempt to retrieve her clothes. Having found Ms. Jiminez's testimony to be

---

[48] 18 Pa.C.S. § 2702(a)(1).
[49] 18 Pa.C.S. § 505; *Com. v. Mouzon*, 653 A.3d 738, 740 (Pa. 2012).
[50] *Com. v. Foster*, 651 A.2d 163, 165 (Pa. Super. 1994).

credible, the jury had more than sufficient facts able to find Bethea guilty of Aggravated Assault (F1) and PIC (M1) beyond a reasonable doubt.

The evidence presented at trial was more than sufficient to sustain Bethea's convictions and the Superior Court was well aware of this Court's assessment, despite appellate counsel's decision not to raise it before the Superior Court. A such, Bethea is unable to show any prejudice sustained on account of appellate counsel's performance.

## CONCLUSION

Based upon this Court's independent review of the record, the petition, and the submissions of counsel, this Court concludes that Bethea's claims do not warrant relief.

BY THE COURT:

_____
CARPENTER, J.

First Judicial District of Pennsylvania
Honorable Linda A. Carpenter
294 City Hall
Philadelphia, PA 19107


Commonwealth v. Hillard Bethea
CP-51-CR-0005123-2008


Date: December 17, 2020


## PROOF OF SERVICE

I hereby certify that I am this day serving the foregoing upon the person(s), and in the manner indicated below, which service satisfies the requirements of Pa. R. Crim. P. 114:

Defense Counsel/Party:　　　Hillard Bethea / KR-5501
　　　　　　　　　　　　　　SCI-Mahanoy
　　　　　　　　　　　　　　301 Morea Road
　　　　　　　　　　　　　　Frackville, PA 17932

Type of Service: ( ) Personal　( X ) First Class Mail　( ) Other: Electronic court notification


Defense Counsel/Party:　　Peter Levin, Esq.

Type of Service: ( ) Personal　( ) First Class Mail　( X ) Other: Electronic court notification


District Attorney:　　　　PCRA Unit
　　　　　　　　　　　　District Attorney's Office
　　　　　　　　　　　　Three South Penn Square
　　　　　　　　　　　　Philadelphia, PA 19107

Type of Service: ( ) Personal　( ) First Class Mail　( X ) Other: Electronic court notification


_____
Janet Brinkman